I just want to announce that Judge Henderson will not be sitting with us today. She'll take it on the recording. Yeah, she'll take it on recording. Case number 16-1407, Charles J. Weiss, Appellant v. Commissioner of Paternal Residence Service. Mr. MacPherson for the Appellant, Ms. Ugolini for the Affiliate. Good morning, Your Honors. Is this adjusted correctly? You can hear me? Yes. Thank you. The main issue in this case is a question of pure law, when the mail date and the notice date do not match which one controls. In this case, they're different because the revenue officer refused to follow a mandatory procedure to ensure that the taxpayer, my client, received notice of the correct 30-day period. Applying an undisclosed mail date when the taxpayer is given a different notice date and is told to use that different notice date goes against everything the statute 6330 stands for. The name of the hearing at issue is due process hearing. Fundamentally, due process requires notice and opportunity. There's no notice if the taxpayer is given the wrong starting date. The statute was enacted specifically to protect taxpayer rights and curb IRS abuses. And that's typically to give them the more expansive right, right? The larger hearing, the hearing that gives you more process, gives you the right to appeal. That wasn't denied him here, right? He doesn't want that, right? Let me unpackage that question. I mean, what I'm getting at is the statute and the regulations are written and typically construed to be more generous to the taxpayer, to give them more time rather than less time. But you want less time here, which is odd. There are two things that you just said. The last one that we want less time is not true. Let me unpack the first part. The statute sets forth a collection due process hearing. And you're right. Specifically, the congressional attempt behind the statute specifically was to give taxpayers to protect taxpayer rights and curb IRS abuses. The regulation that implemented it set forth a second parallel hearing called an equivalent hearing. So you have two rights, the collection due process hearing and the equivalent hearing. A taxpayer applies for them on the same form, form 12153. There's a box to check if you want the equivalent hearing, right? I'm sorry, I didn't catch that. There is a box to check if you want the equivalent hearing. Am I not correct? There is a box on the form, but by regulation. And your boss did not check the box, right? It is true that he did not check the box. It is also true that under the regulation that's irrelevant. If you're late, if you request a hearing beyond 30 days, poof, by law, by regulation, it's crystal clear, you don't get a collection due process hearing. You get an equivalent hearing. And the regulation requires, there's a requirement in the regulation, that the IRS offer an equivalent hearing to a taxpayer who happened to request a hearing after 30 days. In this case, my client was never offered that equivalent hearing. The IRS did not fulfill the regulation. So back to my point, telling a taxpayer that he has a particular 30-day window, but then secretly, unknowingly to the taxpayer, applying a different 30-day window. Didn't your taxpayer say here that he wanted to come outside the time? Correct. Yeah. And under the regulation, he had that right. He had the right to request an equivalent hearing. He meant to be untimely. And we're here because the IRS says he failed to be untimely when he meant to be. Am I not correct in that? Yeah, it's a funny double negative. He meant to be untimely, and we're here because the IRS said, no, you're not untimely. That's right. Yes. Yes. So the idea that he was surprised by the discrepancy in the date is kind of strange when you're saying he's surprised by it, but he meant to take advantage of it. Is that? Well, let's clarify what he was surprised by. He saw ever at any point in time exclusively one and only one date that would conceivably begin the 30-day period under the statute, and that's the date written on the form itself, the notice of levy form. He never saw any other date. He was never given any other date. So if you have one and only one, exclusively one date in front of you, when did you start the 30-day period? There was another date, right? It was a date, the postmark on the envelope. There was no postmark. I thought the envelope was thrown away. I thought that was the evidence. The envelope was thrown away, but there was no postmark on it. That's clear on the record. There was a meter mark date. I'm sorry. A meter mark is not evidence of the date something was mailed. It's not the same as a postmark. But there was testimony here that, in fact, we were able to establish the date on which it was mailed. One of two dates. It was either or, two dates possible. So on that point, the statute is very crystal clear. The statute is crystal clear that it's when it's sent, right? Yes. When it's sent, not the date on the notice itself. I'd like to address the date. The way this works is I speak. I'm sorry.  It's the date that it's sent. And there's evidence here that it was sent at a later date. And so the clock starts running at a later date. And typically, that inures to the benefit, that interpretation, that approach, inures to the benefit of the taxpayer because it gives him or her more time to respond. Ordinarily, that would be true. I disagree with the date part. That is the ultimate issue to be decided, which state controls. And on that matter, the statute has the word shell in it. Shell include, in simple and non-technical terms, this, that, and the other, one of them being the 30-day period in which you have to request a hearing. So as to your question of the date on the envelope, my client never saw the envelope. The tax court in its written opinion admits that twice. But hypothetically, just hypothetically, they've seen it. But you said your client never saw the envelope, and the suggestion there is there is some wrongdoing by the part of the government. Your client never saw the envelope because something happened at his household where he didn't retain the envelope. Let's pretend that he did see the envelope. What would he have seen on it? Not a postmark. He would have seen a meter mark, which is not evidence of the date something was mailed. So he would have to fulfill the statute. It's not evidence. It can be corroborative of testimony when it's mailed. And we have in this case testimony about the mailing. That would be evidence if you had it here. It wouldn't be conclusive evidence like a postmark. Would it be evidence of what this taxpayer received? No. Would it be evidence of what this taxpayer knew? No. Had he seen that envelope, he would have had to do some Sherlock Holmes sleuthing to translate a meter mark into a possible mailing date. I submit that's not simple. That's not technical. The statute was not fulfilled. So whichever date you want to control, you have to, per the statute, give notice of that to the taxpayer in, quote, simple and non-technical terms. Now the statute does not answer the question of which date controls. We all know that. So we would look then to the regulations, perform a Chevron analysis, to see if the regulations explain which date controls. As briefed in detail in our briefs, the regulation is clear. The word notice is a noun, as in the phrase date of the notice or date on the notice. It's a noun. The date of the notice, the date on the notice, is the date that's on the notice. And, again, that's the one and only exclusive date this taxpayer ever received. But it doesn't say on the notice in the reg, does it? It says of the notice, doesn't it? The regs might say date of the notice. Accompanying within that levy notice, there were multiple IRS publications. There's no word where it clearly says the date on the notice, is there? You're talking about Chevron 1. And there's no word where it clearly says the date on the notice, is there? That's the exact phrase of one of the publications that accompanied the levy notice. Other sources of regulations might say the date of the notice. But that preposition makes no difference. I think it makes all the difference in the world. I'm sorry? I think it makes all the difference in the world. If you're saying there's a clear interpretation of on the notice, that's very different than saying of the notice, if the notice is actually governed by the mailing date. My point is argued in the briefs is that the word notice is a noun, not a verb. The word of and on is a preposition, not a noun. The word notice is a noun. So date of the notice, date on the notice, date in the notice. It's very clear we're dealing with a notice. The question is, is the date the one that is on or of the notice, right? The date on the notice is the one you want to be governed by? That is true. Yeah. But if of the notice could also mean of the time it was prepared or of the time it was mailed or of the time it was received, then that's not a favor on one question, right? I believe the statute is clear that a taxpayer has to be notified of the date that begins a 30-day period. Arguing over which preposition misses that larger point. That point also is consistent with the congressional tent behind the statute, which both parties mentioned that in their briefs. The congressional tent behind the statute was to protect taxpayer rights incurred by arrest abuses. There's no protection of taxpayer rights if we're, so to speak, hiding the ball. Given that the taxpayer won and only won exclusive data telling, oh, I'm sorry, that was the wrong date. You're already into the rebuttal time. Yes. We'll give you some time back. Thank you. Thank you very much. We'll hear from the government now. Good morning, and may it please the court. I'm Francesca Ugolini, Counsel for the Commissioner of Internal Revenue. So if I'm a taxpayer, how am I supposed to know when the 30 days start? I get this packet of information. I don't have a postmark on it. I've got a letter inside that has one date. I've got some instructions that are contradictory. What am I supposed to do? Why is this so difficult? Why can't the IRS make this plan? Why can't there be in the envelope a letter that says the date starts running from X? These are taxpayers. These are normal citizens, not like you and me, right? They don't read things as carefully to know the difference between on and off. Certainly. In an ideal world, the date on the letter would match the date of mailing so that a taxpayer could, even though. That's not a very high ideal. Yeah, that's too high. Why does it have to be an ideal world in order for the IRS to actually notify the taxpayer of what date the 30 days start running from? There is no statutory or regulatory requirement that the IRS notify the taxpayer. Whoa, whoa, whoa, whoa. You do all kinds of things you're not required to do. That isn't an answer to our question. When we say why doesn't the IRS do it, it is not an answer to say we don't have to. Does it not make sense that if the purpose is to give the taxpayer notice of how much time he's got to make the request in, the IRS would have to tell him? Isn't that something the government should know without having to be told? That, first of all, taxpayers are charged with knowledge of the law. And there are a lot of cases out there involving different kinds of notices where the IRS. Walk me through. I'm the taxpayer. What am I supposed to do? I've got the envelope, and I've got all sorts of different dates on it. So what am I supposed to do? I want to comply with the law. I want to know how much time they have to respond. What do I do then with this conflicting information in front of us? I'm charged with the knowledge of the law, but practically speaking, what do I do? I think that if you're a taxpayer who really wants a collection due process hearing, then you count out. I think it's fair that they would probably look at the date on the letter. They would probably count 30 days from that date. And then if you really want a CDP hearing to protect your rights, you make sure that you fill in the form and send it back to the IRS well before the 30 days has run. That way. Well before? Why should you have to do it well before? The whole purpose in the 30 days is so you have a time frame within which to send it. That's right. But if you are a – the question is if I really want to get this done and I'm really unsure. No, that's not the point. Yeah, that was the question. The question is how do I know how much time I have? How am I supposed to find out how much time I have when I've got these dueling dates in front of me? Well, if you – the regulations and the materials provided to the taxpayer say the date of the notice, and if a taxpayer got online and looked up the Treasury regulations, there is an example that – A taxpayer is supposed to have to get online and look up the regs. The IRS has it the whole time. Why does the taxpayer have to do that for you? There is only one notice that Congress has required the IRS to put the last day for filing on. That's a notice of deficiency, and the Internal Revenue Code requires the IRS to put the last day for filing on a notice of deficiency so that taxpayers have a date certain on which to file in the tax court. But in this case, it didn't get a date certain. That's right. But Congress is – You're not going by the date on there. You're supposed to be giving them the date certain. You're absolutely right about that. And if your people don't know how to do that, they could go online and find out how to put that on there. I expect they know how. The law doesn't require the IRS to give a date certain, and whether the request was timely is governed by the statute. The law requires the taxpayer to operate within a 30-day period from a date which the IRS has called to become relevant. That's about as close as you can come to saying the IRS has to deal with a date certain. I mean, Congress could say, listen, IRS, we mean by that that you have to tell the taxpayer what date it is. But to say the law doesn't require you to do it, that's not much of an excuse. It may be the best practice of the IRS. That may be something to consider as a best practices issue. But there are also a lot of cases where the IRS, even though not required by law, lists a date on a notice saying this is your last day to seek tax court review. And the IRS, the person who calculates that date, has sometimes gotten that wrong. So then the taxpayer ends up with incorrect information that wasn't required to be provided by law. And there's a slew of cases where taxpayers have filed by those dates, and courts have held that even though an individual IRS agent made a mistake regarding the date that was gratuitously listed on this letter, the statute controls whether or not the petition was timely. It comes back to the operation of the statute. Don't we come back to what Judge Griffith was asking you? How is the taxpayer in this case supposed to know from when the 30-day runs within which to? I think it's generally fair for a taxpayer to look at the date that is on the letter, compute 30 days, and mail it in. Well, wasn't that what the taxpayer here did? He did, and his request was timely. He wasn't prejudiced because most taxpayers, they want a collection due process hearing. They want the chance to – they want the levy enjoined so that they're not going to get a notice of levy on their bank account. And what happened in this case gave the taxpayer more time to seek administrative review and have the full rights provided under Section 6330. The taxpayer has done what you just got through saying he should be able to do. He relied on the date on the notice. Right. And he relied on, in this case, to deliberately try to make his filing untimely. Had he wanted to make his filing untimely, he had a year to request an equivalent hearing. So if he wanted to be sure that the statute of limitations would not stop, he didn't need to file the 31st day. You're saying the notice means nothing? Pardon? You're saying the 30-day notice requirement means nothing? The statute – no. He has to do it within a year, but he's dealing with a law that requires 30 days. They don't allow 30 days. If a taxpayer wants to have a statutory collection due process hearing, that has to be requested within 30 days. If the request is made after 30 days, then they get an administrative hearing called an equivalent hearing. It doesn't come with the full statutory consequences of a CDP hearing, but you have up to a year to request an equivalent hearing. And that's how an untimely request is normally considered. This is not a case where the IRS letter postdated the mailing so that the taxpayer thought the 30th day started after the day on which it had actually begun. This is a case where the 30 days began to run after the date on the letter. It afforded the taxpayer here two more days to request a collection due process hearing. He filed it. The statute controls whether or not the request was, in fact, a statutory collection due process request, and it was under the plain language of the statute, I think as Judge Griffith pointed out. 6330A2 starts the 30-day clock on the basis of one of three events. When the notice is given in person, which here the IRS agent actually tried to do, which is why the dates were different. He printed the letter out on February 11th, attempted to hand deliver it, and couldn't get down the taxpayer's driveway because of a dog. The second thing that could start the clock is whether it's left at the dwelling place, also something the IRS agent attempted to do on February 11th, or sent by certified or registered mail to the person's last known address. That is what he did. There is no dispute that it was sent by certified or registered mail. That's on pages 55 and 56 of the joint appendix. I heard counsel make reference to the meter mail not being a true postmark, but what the statute actually requires is that it's sent by certified or registered mail, and that's what happened here. That happened on February 13th, and that is the day that the 30-day clock began to run. If the Court has any further questions, just ask that the decision of the taxpayer be affirmed. You're not abandoning reliance on that RH turns period? No, we're not abandoning reliance. I think that case, we relied on that case mainly to refute the taxpayer's claim of prejudice. The taxpayer's claim that he was prejudiced because he didn't get the opportunity to file an untimely request that would have stopped the limitations period, and the government's response to that is that if he really wanted to file an untimely request that would have stopped the limitations period, then the government needed to be on notice of that so that it could levy for his unpaid taxes before the limitations period expired. So having sent in a hearing request that asked for a CDP hearing, he can't be heard to complain that he actually got that, and so the government forbore from collecting his taxes. Okay, thank you. Thank you. How much time does the commissioner have? We'll give you a minute. Give you one minute. All right. One minute. I'll be fast. Verification. We assert that it was an abuse of discretion for the settlement officer to verify that all statutes, that all law and administrative procedure has been followed. He asked for rebuttal. Yeah, that this is only to rebut the government's argument. Okay. Thank you. Unless I misheard, Counsel, Counsel said that if measured by the notice date, my client's Form 12153 was on time, was within the 30 days. That's a mistake. If measured by the notice date, he was one day late. Now, it's true that under the regulations a taxpayer has up to a year to request an equivalent hearing, but the regulation doesn't say you must wait a year or 11 months or 10 months or any period of time. The regulation clearly states that if you're one day late, the IRS is supposed to, without the taxpayer doing anything further, offer the taxpayer an equivalent hearing. You just have to be one day late per the regulations. My client was one day late if measured by the notice date. I believe I'm out of time. Thank you. The case is submitted.
judges: Henderson, Griffith, Sentelle